ILLINOIS CENTRAL RAILROAD COMPANY

*v.*

ELIJAH SWEARINGEN.

1. INSTRUCTION—*which asserts an abstract rule of law.* An instruction which asserts a mere abstract rule of law, will not be ground for reversal, but it must be calculated to mislead, and the court must see that it did have the effect to mislead the jury in finding their verdict.

2. SAME—*may be explained by others.* And where an instruction is given, which standing alone, might mislead, by being too broad, is accompanied by others which properly limit and qualify its meaning, so that it is clear the jury could not have misunderstood them, taken together, the giving of such instruction is not ground for reversal.

3. NEW TRIAL—*where the jury mis-apply the law.* Where the court properly lays down the law, and it is clear that if the jury had properly applied it to the facts before them, their verdict would have been different, a new trial should be granted. :

4. NEGLIGENCE—*in railroads—keeping fences in repair.* Where a railroad is enclosed by a sufficient fence, and a casual breach occurs therein, without the knowledge, or fault of the company, and through such breach, stock get upon the track and are injured, the company will not be liable, unless they have had a reasonable time to discover such breach, or have been notified, and failed to repair, before the injury occurred.

5. So, where an employee of the company, whose duty it was to keep fences in repair, passes over the road at 4 o'clock, p. m., on Saturday, and finds the fences in repair, and again on Monday morning passes over the road and finds that the fence has been recently broken, and that through such breach, stock got upon the track and was injured : *Held,* that the company had shown reasonable diligence in keeping the fence in repair, and were not liable.

APPEAL from the Circuit Court of DeWitt county ; the Hon. JOHN M. SCOTT, Judge, presiding.

This was an action on the case brought by Swearingen, against the company to recover the value of three horses of the plaintiff, killed by a train on defendant's road, which passed through plaintiff's land.

The fence was seen Saturday afternoon by a section master, and he testifies it was then up. That night, one horse got upon the track and was killed. Sunday night, two other horses got upon the track and were killed. It appears that the place where the stock got on the track was at a place used by the neighbors as a place of crossing the fence to cut across the field ; that the fence was five feet high when a pole was on the tops of the posts ; that at this crossing, the pole was frequently off ; there was no positive evidence that this pole was knocked off at the crossing before the horses broke through, except that, with the pole on, the fence had, heretofore, kept in these same horses.

For the plaintiff, the court gave the following instructions :

1.   In determining the question as to whether the fence was sufficient to turn hogs, horses, sheep and cattle, the jury have a right to take the testimony of farmers who are acquainted with fences.

2.   If the jury believe from the evidence, that the defendant did build, or cause to be built, a suitable and sufficient fence along their road through the plaintiff's land, then it was the duty of the company to keep up the fence so that it was at all times good and sufficient.

3.   It is the duty of the defendant to maintain a fence along the railroad, good and sufficient to turn cattle, sheep, horses and hogs, unless by a contract with Swearingen, he, Swearingen, agreed, as proprietor of the land adjoining, to maintain such fence.

4.   If the jury believe from the evidence, that the defendant did not build a fence and maintain along the line of the rail road, through the land of the plaintiff, suitable and sufficient to prevent cattle, horses, sheep and hogs from getting on the track of the railroad, and if they further believe from the evidence, that the plaintiff's horses got on the track by means

of the insufficiency of the fence, and were killed by defendant's train on the track, then the jury should find for the plaintiff so much as they believe from the evidence, the horses so killed were worth.

To all of which, the defendant then and there excepted. The court then gave the following instructions for defendant:

1. The court instructs the jury for defendant, that if they believe from the evidence, that there was a good and sufficient fence built by the railroad through this plaintiff's farm or pasture, where the plaintiff kept his horses, and was kept in repair by the defendant, then they will find for the defendant.

2. That if the jury believe from the evidence, that the defendant built and kept in repair a good and sufficient fence at the place in Swearingen's pasture where the horses got on to the track, then they will find for the defendant.

3. That if the jury believe from the evidence, that defendant had a good and sufficient fence on Saturday, Sept. 11, 1860, and that it was broken down by trespassers, or burned down, or blown down, without fault of defendant, and that Swearingen's horses got through this fence before the defendant had reasonable time to repair the fence, then they will find for the defendant.

4. If the jury believe from the evidence, that the railroad had a good fence on the Saturday at 11 o'clock, and before the horses were killed, and that it was a good and sufficient fence on Monday morning next afterwards, and that the defendant's agent, whose duty it was, saw this fence at both of said times above specified, that is evidence tending to show that defendant used due diligence.

5. That if the jury believe from the evidence, that Swearingen, when he built the fence, agreed that if defendant would let plaintiff build this fence tight, so as to keep in hogs, and that if plaintiff wanted to turn in horses or large stock, he would put on an additional board or pole to keep them in, and he failed to do so, and by reason of such failure, the

plaintiff's horses got on the defendant's railroad and were killed, then the plaintiff cannot recover.

6. That the defendants, after they have built a good and sufficient fence through a farm, and it is blown down, burnt down, or thrown down by trespassers, the defendants have a reasonable time to repair their fence, and that they are not responsible for any damages which may ensue until such reasonable time has elapsed.

The jury rendered a verdict for $305.00. The defendant moved for a new trial and the court overruled their motion and exception was taken, and the case brought to this court.

The company here insist that the instructions given for the plaintiff are erroneous, and that the finding of the jury is not supported by the evidence.

Mr. C. H. MOORE, for the appellant.

Mr. L. WELDON, for the appellee.

Mr. JUSTICE WALKER delivered the opinion of the Court:

It is insisted that the first of appellee's instructions is wrong, and misled the jury. It informs them that they may take the testimony of farmers as to the sufficiency of the fence to turn stock; and it is contended, that there is no evidence in the record that farmers had testified on that question. Even if there was no evidence, from which it might be inferred that a portion of the witnesses were farmers, still we cannot imagine how the jury could have been misled by it. Nor can we infer, as suggested, that the jury would conclude that they were authorized to hear such evidence after they had retired. If there was no such evidence, then the instruction had no possible application to the case. The court will never reverse simply because an instruction asserts a mere abstract rule of law, but it must be calculated to mislead, and

27—47TH ILL.

the court must see that it may have misled the jury in finding their verdict.

The last clause of the second instruction is complained of as being too general. It asserts that appellants were bound to keep the fence in repair, so it was at all times sufficient to turn stock. Had this instruction not been limited by other instructions given, it would perhaps have been too broad, but it was sufficiently limited by the third instruction given for appellants. These instructions are neither so repugnant to each other, or numerous and lengthy, as to have left any doubt on the minds of the jury as to their meaning. We can see no error in giving this instruction, when considered in connection with appellants' instructions.

Was the verdict of the jury against the weight of the evidence, and against the instructions? We, after a careful examination of all the evidence in the case, can find no neglect or default on the part of appellants. Appellee built the fence himself, and he does not say in his evidence that it was insufficient to turn stock; nor does his evidence show that it was out of repair at the time the stock was killed. Nor does his other witness state that the fence was insufficient or out of repair. Appellants state that the place where the horses got over the fence was a crossing where the neighbors frequently passed, and that boards were sometimes knocked off, so as to render the fence insufficient until it was repaired; but there is no evidence that it was in that condition at that time. And even if planks had been broken off from that cause, the road would not be liable until they had a reasonable time to repair the injury, or had been notified of its condition before the horses were killed. Considering the evidence of appellee, disconnected and apart from that of appellants, it would be highly questionable whether it would sustain the verdict.

Appellants' evidence, if it can be believed, shows that the fence up to within a few hours of the time when the horses were killed, was in good repair. Donohue swears that he

saw the fence twice on the Saturday one of the horses was killed, the last time about four o'clock in the afternoon, and that it was then in good repair. That he again saw it on Monday morning following; that one of the horses was killed on Saturday night, and the others were killed on the next night. That the next morning when he saw the fence, the planks had been nailed on the posts, but the top board had been freshly broken and the next one split and knocked off; there was hair on the boards, and it had all been recently done. When the proper agent of the company, whose duty it was to look to and keep the fence in repair, is shown to have seen it in good repair on Saturday afternoon at four o'clock, and again on Monday morning, we are at a loss to understand how there was any neglect of duty on the part of appellants. This would seem to be reasonable diligence in the discharge of their duty to the public and to the owners of stock along the line of the road.

The instructions fairly presented the law, and had the jury regarded them and applied the rules they announce to the facts, they would have arrived at a different conclusion and returned a different verdict. We regard it as manifestly against the instructions and the evidence, and the court below should have granted a new trial. The judgment of the court below is reversed and the cause remanded.

*Judgment reversed.*