THE CHICAGO, BURLINGTON & QUINCY RAILROAD COMPANY

V.

WILLIAM A. KENNEDY.

*Railroads—Cattle Guards—Maintenance of—Snow—Negligence—Reasonable Time to Remove Snow—Evidence—Compromise Verdict.*

1. Neither the winter season nor times when there are great or unusual accumulations of snow are excepted from the operation of the statute requiring railroad corporations to construct and maintain cattle guards at crossings of public highways.

2. Where a sufficient cattle guard becomes insufficient because of a violent snow storm. the railroad company has a reasonable time within which to remove ice and snow accumulated therein.

3. In an action for damages for the killing of two horses which had walked from the public highway over a cattle guard filled with snow it is, *held:* That the evidence does not support the verdict for the plaintiff; that the defendant company, by the use of reasonable diligence, could not have removed the snow from its cattle guards within forty-eight hours after a storm of unusual violence, which caused a general blockade of its road; that a certain statement of a section boss was not competent evidence to establish the negligence of the defendant; and that the verdict appears to have been the result of a compromise.

[Opinion filed January 22, 1887.]

APPEAL from the Circuit Court of Knox County; the Hon. ARTHUR A. SMITH, Judge, presiding.

Messrs. WILLIAMS & LAWRENCE and O. F. PRICE, for appellant.

It must be the rule in cases of this class that actual notice of the condition of the cattle guard, and to its being insufficient, must have been brought to the railway company before any negligence could have been imputed to it. This is the universal rule governing sidewalks in cities, and has prevailed, at least so far as fences are concerned, in railway cases.

When the fences, which are provided for and covered by the same sections of the statute under which this suit is brought, are once properly constructed, the railroad company must have notice of such defects with intervening reasonable time to enable them to repair, or else sufficient time must have elapsed after the defect occurs, to raise a presumption of notice as against the company and also reasonable time for repair. Aylesworth v. C., R. I. & P. R. R. Co., 30 Iowa, 459; Lemon v. C. & N. W. R. R. Co., 32 Iowa, 151; Poler v. N. Y. C. R. R. Co. 16 N. Y. 476; House v. Cayuga & S. R. R. Co., 26 N. Y. 428; I. C. R. R. Co. v. Dickerson, 27 Ill. 55; I. C. R. R. Co. v. Swearingen, 47 Ill. 206, 210.

Messrs. FREDERICK & WILLOUGHBY, for appellee.

This is a case in which the only question, that of the negligence of the defendant, was fairly submitted to the jury, who have found in favor of the plaintiff, and this court following

the well settled rule that verdicts will not be disturbed unless so palpably contrary to evidence as to show that they are the result of prejudice or passion, will not reverse the judgment. The evidence shows, and so the jury found, that the company had reasonable time in which to clear out these cattle guards. The company ran the snow plow, a freight train, and the regular passenger over these guards, and if it seems proper to commence the running of trains before the road is in condition to do so with safety to stock, it must do so at the risk of paying for stock, if any be injured.

Baker, P. J. This suit was brought before a Justice of the Peace under the provisions of section one of the act in relation to fencing and operating railroads, as amended in 1879, to recover the value of two horses of appellee killed on the railroad track of appellant, within its right of way. The horses had escaped from the stable where they were usually kept, and had walked from the public highway upon the track and right of way over a cattle guard which was filled with snow. The judgment before the Justice was for the corporation, but upon appeal to the Circuit Court, the verdict and judgment were for appellee for $150 damages and $25 attorney's fees and costs of suit.

The claim is made by appellant that the law does not require that a railroad company, unless under exceptional and extraordinary circumstances, should clean out ice and snow from the cattle guards along its track; and the decision of the Supreme Court of Minnesota in M. & St. L. R. R. Co. v. Blais, 22 Am. & Eng. R. R. Cas. 571, is cited as authority for such doctrine. The conclusion reached in that case is put upon grounds that have local application to the State of Minnesota; that it is not the custom in that State to attempt to remove the accumulations of snow from railroad cattle guards in winter, and that the expense necessary in that climate to keep them clear is out of proportion to the danger in allowing them to remain filled with snow, and therefore it is not reasonable to require its removal. That the custom mentioned does not prevail in this State, is sufficiently indicated

by the evidence in the case at bar of the division superintendent of the appellant company, who testified upon the trial it was usual for the company, in the event of a severe snow storm, to go to work clearing off the track and cleaning out fences and cattle guards.

The other reason given for the decision has but little force when applied to the climate of Illinois.

The statute of this State makes it the duty of railroad corporations to construct and maintain, at the crossings of public roads and highways, cattle guards suitable and sufficient to prevent cattle, horses, sheep, hogs and other stock from getting on such railroad. Neither the winter season, or times when there are great or unusual accumulations of snow, are excepted from the operation of the statute; and it is difficult to perceive the good that would be accomplished by having cattle guards, if they are not kept open but are permitted to remain filled up with snow so that horses and cattle can pass over them upon the right of way. It was held in Dunnigan v. C. & N. W. Ry. Co., 18 Wis. 28, under a statutory requirement similar to ours, that where a railroad company permits its cattle guards to remain filled with snow, so that cattle which have gotten upon the highway without any negligence on the part of the owner, pass over the guards, and in consequence of being thus upon the track are injured by a train, the company is liable for the damages. We are not inclined to hold as law in this State the rule announced in Minnesota.

At the same time, it is to be borne in mind it is not any more obligatory upon railroad corporations to keep their cattle guards open, than it is for them to keep the fences on both sides of their roads in such condition as to be suitable and sufficient to prevent the animals specified in the statute and other stock, from getting on their railroads; the two duties are imposed by one and the same section of the statute and in the same language. In I. C. R. R. Co. v. Dickerson, 27 Ill. 55, it was held that a railroad company is not required to keep a patrol at night along the road, to see that the fence is not broken down; and that if the fence is sufficient, and all reasonable diligence is used to keep it up, the company will not be guilty of negligence in that particular.

In I. C. R. R. Co. v. Swearingen, 33 Ill. 289, it was held that where a railroad fence has been sufficient, and from accident or wrong over which the company had no control, it becomes insufficient to turn stock, the company has a reasonable time within which to repair it; and that it will be held to a high degree of diligence, but not to an impossible or unreasonable extent.

In I. C. R. R. Co. v. Swearingen, 47 Ill. 206, one of the horses was killed on Saturday night and the others killed on Sunday night, and the court said: "When the proper agent of the company, whose duty it was to look to and keep the fence in repair, is shown to have seen it in good repair on Saturday afternoon at four o'clock, and again on Monday morning, we are at a loss to understand how there was any neglect of duty on the part of appellants; it would seem to be reasonable diligence." To the same effect is I. C. R. R. Co. v. McKee, 43 Ill. 119. In this case the cattle guard in its normal condition was suitable and sufficient to turn stock, but it was temporarily impaired by the accumulation of snow. The material question that arises upon the record is whether, under the circumstances, appellant was guilty of a want of reasonable diligence in removing the snow from the cattle guard. In other words, was appellant guilty of culpable negligence.

A snow and wind storm commenced on Sunday, February 8, 1885, and continued all Sunday night, all day Monday and all Monday night. It stopped snowing Tuesday morning, but the wind blew hard that day and the snow drifted badly until noon. The weather was intensely cold, and some of the witnesses state it was the most severe weather they ever experienced. When appellee got up Monday morning a train was stuck in the snow at the highway crossing where the horses afterward entered on the right of way, and two engines were trying to get it out. That was the last locomotive or train that passed over that part of the road until Tuesday afternoon. All travel on the railroad was stopped and all movements of trains made impossible by the deep drifted snow. The employes of the company were busy day and night with

engines, snow plows and gangs of men, attempting to relieve passenger and stock trains caught in the storm and to remove snow from the track. About three o'clock Tuesday afternoon a snow plow with two or three engines went over the part of the road in question, and that was the first movement on the tracks there since Monday morning. A freight train and a passenger train afterward passed there that evening.

The track between Galesburg and Knoxville was blocked up its whole length until the snow plow came along. Crimmens, the section foreman, testifies he only got about a mile and a half from Galesburg by Wednesday morning; that he worked all day Tuesday with his gang of men in the cut, about eighty rods long; that the snow kept drifting all the time and it took all day to shovel through the cut. He further states they ran the hand-car down as far as they could get it; that they could not have got it down to the cattle guard in question until after the snow plow had gone over the track; that there are seven cattle guards between Galesburg and the one in question, and he did not get any of them cleaned out that day, as they wanted first to get the snow off the track, so as to see if any rails were broken. In addition to what this witness says, the court will take notice the days were quite short at that season of the year, and that after three o'clock in the afternoon there were but few hours of daylight.

F. C. Rice, the division superintendent, testifies the storm was very severe, and the first care of the company was to get the passengers out of the snow and relieve the stock in transit, then to clear the track for the running of trains, and then to clean out the fences and cattle guards.

The horses got on the railroad track on the night of Tuesday, the 10th of February, and were killed at about the hour of 11 that night. The only circumstances that are claimed as tending to prove negligence on the part of appellant are two, and they are both found in the testimony of appellee himself. He states with reference to the work done in the cut, that the snow was shoveled out between the rails, and that outside the rails it was shoveled away so you could see the ties and walk on them right along.

We suppose the conclusion intended to be deduced from this statement is that the section hands had occupied more time in the cut than was necessary, and thereby delayed the opening of the cattle guard. The weight claimed for the fact mentioned is greatly weakened by several considerations.

The witness says that when he found Crimmens, he and his men had just come from dinner and were shoveling snow in the cut, and *non constat* but that the time alleged to have been misspent was wasted that Wednesday forenoon, many hours after the horses passed over the cattle guard and were struck by the train.

Its weight is still less, especially in the light of the evidence of Crimmens, Rice and the other witnesses for appellant, by his own statements on cross-examination, that the snow was away so you could see the rail, and whether it was broken or not; that he does not know as he could have told that before the snow was removed, and that if the top of the rail was visible he could not tell if it could be known whether it was broken or not. It would seem, particularly in view of the extreme cold weather that prevailed and the severe and continued storm that had occurred, it was of primary importance that broken rails should be discovered and the safety of passengers and employes thereby assured, and that in comparison therewith the cleaning out of the cattle guard was of secondary moment. It is plainly deducible from the evidence it would have been utterly impossible on Tuesday to have attended to passengers, stock and trains; to have freed the tracks from obstructions, and also have dug out the snow from all the cattle guards on the 600 miles of road in this division; and we perceive no good ground for saying this particular cattle guard should have been attended to in preference to the other cattle guards. Whilst a high degree of diligence and responsibility is imposed upon railway corporations by the statutory requirements to erect and maintain fences and construct and maintain cattle guards, yet the law is not so unreasonable as to demand of them that which is reasonably impossible.

The other circumstance to prove negligence, is the claim

that on Wednesday, Crimmens, the section boss, told appellee that the cattle guards ought to have been cleaned out the day before. So they ought, and ordinarily it would be required of appellant it should have been done, but here it is claimed it was not reasonably practicable to do so. Besides, what Crimmens said was merely the statement of his opinion, and probably those who directed his work thought otherwise and were of opinion the clearing of the track was of more pressing importance. In any event the evidence was not competent to establish the negligence of appellant, as Crimmens could not make such statement to bind his employer; it was not a statement in regard to what he was at the time doing as servant and made *dum opus fervet*, but had reference wholly to the past.

Upon full consideration of the evidence our conclusion is, that it does not sustain the verdict, but on the contrary shows that the stock in controversy were injured and killed at a time so soon after the snow-fall and storm and consequent blockade, and under such circumstances that the appellant company, by the use of reasonable diligence, could not have had the accumulation of snow removed from the cattle guard. It appears from the record that the trial before the Justice resulted favorably to the company. It also appears that upon the trial in the Circuit Court there was no testimony whatever tending to prove the two horses were of less value than $200, or that the reasonable attorney fee was less than $50, and yet the verdict of the jury allowed only $150 for the horses and $25 for the fee. And upon the polling of the jury, one of the jurors answered: "It is my verdict, but under protest."

These are plain indications it was a compromise verdict, and not the honest judgment of twelve men.

It was error to overrule the motion for a new trial. The judgment is reversed, and as appellee has no cause of action the cause will not be remanded.

*Reversed.*