# CHICAGO, BURLINGTON & QUINCY RAILROAD COMPANY
## v.
## OSCAR FINCH.

*Railroads—Negligence—Injury to Stock—Farm Crossing—Improper Gate—Contributory Negligence.*

1. A distinction should be observed in cases where defective conditions causing an injury are incident to the original construction, and those in which such conditions have arisen afterward. In a case of the first class, notice of the dangerous condition is not required, nor need one repair, while in a case of the other class a railroad company can not be held negligent and liable, unless it had reasonable time to discover the defect, or had been notified, and failed to repair before the injury occurred.

2. Where a railroad company, bound to hang a safe and proper farm gate in a proper manner, neglects to do so, and stock escapes through the same, and is killed or injured, the company will be liable.

3. Where the negligence was that of the owner or his servant in the use thereof, he can not recover.

[Opinion filed December 7, 1891.]

APPEAL from the Circuit Court of Knox County; the Hon. ARTHUR A. SMITH, Judge, presiding.

Messrs. O. F. PRICE and WILLIAMS, LAWRENCE & BANCROFT, for appellant.

Mr. A. M. BROWN, for appellee.

HARKER, J.   Appellant's road runs through appellee's farm. The parts thus divided are connected by a farm crossing and gates.   On the night of August 17, 1888, two of appellee's horses escaped through one of the gates from a pasture, and were killed by appellant's passing train.

Appellee brought his action to recover damages for the killing of the horses, and charged as negligence, insufficient fastenings for the gate, and such construction that slight force applied to its sides would cause it to open so that stock would escape upon the railroad track.   A trial resulted in a verdict and judgment of $300 for the value of the horses, and $40 attorney's fee for appellee.

It appears, from the evidence, that the gate in question, which had been but recently placed by the appellant company, was a sliding gate of five bars, held together by three upright boards, nailed one at each end and one at the center. At the butt it hung on two cleats, which were so fastened upon posts, as to perform the office of hinges in opening and closing the gate.   At the front it shut between two posts, so set as to allow the ends of the boards to pass by them a few inches and rest upon the ground.   The manner of opening the gate was to raise it from the ground at the front, slide it back upon the cleats at the butt until the front end had passed the two posts, and then swing it upon the cleats around upon appellant's right of way.   As shown by the evidence, the most approved mode of fastening such a gate is by means of a cleat nailed near the top of and upon the two posts at the front, and a notch at the end of one of the horizontal planks

of the gate. When shut, the notch hooks over the cleat and prevents the gate from sliding back when rubbed or pushed against by stock. No fault is found with the gate itself. The sole complaint is over the manner in which it was placed. No fastening of any kind was provided. The ground slanted toward the butt, the butt was the heavier end, and at the time of the injury an accumulation of dirt between the posts so raised the front end of the gate when closed, that it was an easy matter to slide it back and partially open it by applying slight force to the sides. Early on the morning after the horses were killed, the gate was found slid back and partially opened. The fresh tracks of the horses were also found about and leading out of the gate, and in all probability they opened the gate in rubbing and pushing against its sides.

It is insisted that inasmuch as appellee frequently used the gate, that he knew no fastening had been provided, that he knew of the accumulation of dirt between the posts, and yet neither notified appellant's agents of its defective condition nor took steps to remedy them himself, he has shown such lack of care and prudence on his part as to preclude a recovery.

There would be much force in this contention, if the proofs showed that the gate was properly placed in the outset, and that the conditions which occasioned the injury arose afterward. A distinction should be observed in cases where defective conditions, causing an injury, are incident to the original construction, and those in which defective conditions have arisen afterward. In a case of the first class, notice of the dangerous condition is not required, while in a case of the other class a railroad company can not be held negligent and liable, unless it had had reasonable time to discover the defect or had been notified, and failed to repair before the injury occurred. I. C. R. R. Co. v. Swearingin, 47 Ill. 206; I. & St. L. R. R. Co. v. Hall, 88 Ill. 368.

We are also clearly of the opinion that if the accumulation of the dirt between the posts was caused by the careless manner in which the gate was used by appellee, or his servants, and that but for such fact the injury would not have occurred,

the appellee could not recover.    But if appellant's servants who set the posts and hung the gate, improperly placed the heavy end down the slant, banked up the dirt between the posts, and left it without any means of fastening, then appellee was under no obligation to notify appellant of the defective conditions, nor to remedy the defects himself.    Hammond v. C. & N. W. Ry. Co., 43 Iowa, 168.

That there was no means of fastening the gate other than allowing it to rest upon the ground between the posts is not disputed, and if the jury believed from the evidence that the dirt about and between the posts was thrown there by the men who set them, and that the accumulation of such dirt was the cause of the injury, the verdict was right.    That they were warranted in such belief the evidence shows.

With the same view of the case that we have, the court below properly modified the first and seventh instructions given for appellant.    The tenth, eleventh and twelfth instructions asked by the appellant were properly refused.

Perceiving no error in the record, the judgment must be affirmed.

*Judgment affirmed.*