## Wyllys K. Smith, Defendant in Error, v. The Baltimore & Ohio Chicago Terminal Railroad Company, Plaintiff in Error.

### Gen. No. 18,326.

1. RAILROADS, § 874*—*when evidence insufficient to negligence in maintaining defective gate at farm crossing.* In an action against a railroad company to recover the value of a bull killed on the defendant's right of way, alleged to have been caused by failure of defendant to maintain a sufficient gate at a farm crossing in compliance with the Act of 1874, J. & A. ¶ 8811, the evidence *held* insufficient to sustain a judgment for plaintiff, where it appeared that the bull escaped to railroad track by lifting the hinge end of the gate so as to sever its connection with post, the evidence also showing that the gate with its fastenings was standard in make.

2. RAILROADS, § 292*—*sufficiency of fence.* Act of 1874, J. & A. ¶ 8811, requiring railroads to erect and maintain a suitable and sufficient fence, does not require such a fence as will withstand breachy cattle, nor does it require gates at farm crossings to be fastened so that it would be impossible for stock to open them.

Error to the Municipal Court of Chicago; the Hon. J. J. COOKE, Judge, presiding. Heard in this court at the March term, 1912. Reversed and judgment here. Opinion filed December 22, 1913.

JESSE B. BARTON, for plaintiff in error.

WILSON & MAY, for defendant in error.

MR. JUSTICE BROWN delivered the opinion of the court.

The defendant in error in this case (plaintiff below) recovered a judgment for four hundred and fifty dollars against the plaintiff in error (the defendant below) in the Municipal Court of Chicago on January 30, 1912. The amount of the judgment was made up of three hundred and fifty dollars, which was the conceded value of a bull belonging to the plaintiff, and one hundred dollars attorney's fees allowed for the prosecution of the case. This case was tried by the court without a jury.

*See Illinois Notes Digest, Vols. XI to XV, same topic and section number.

The bull belonged to the plaintiff.  It escaped from a farm adjoining the defendant's right of way and railroad two miles north of the Chicago Heights station in Cook county.  It went upon the tracks of the defendant and was killed by a train which struck and ran over it.

The action was brought under the "Act in relation to fencing and operating railroads," approved March 31, 1874.  (J. & A. ¶ 8811.)  This act is as follows:

"Every railroad corporation shall within six months after any part of its line is open for use erect and thereafter maintain fences on both sides of its road or so much thereof as is open for use, suitable and sufficient to prevent cattle, horses, sheep, hogs or other stock from getting on such railroad, except at the crossings of public roads and highways, and within such portion of cities and incorporated towns and villages as are or may be hereafter laid out and platted into lots and blocks, with gates or bars at the farm crossings of such railroads, which farm crossings shall be constructed by such corporation when and where the same may become necessary, for the use of the proprietors of the lands adjoining such railroad; and shall also construct, where the same has not already been done, and thereafter maintain at all road crossings now existing or hereafter established, cattle guards suitable and sufficient to prevent cattle, horses, sheep, hogs and other stock from getting on such railroads; and when such fences or cattle guards are not kept in good repair such railroad corporations shall be liable for all damages which may be done by the agents, engines or cars of such corporation to such cattle, horses, sheep, hogs, or other stock thereon, and reasonable attorney's fees in any court wherein suit is brought for such damages or to which the same may be appealed, but where such fences and guards have been duly made and kept in good repair such railroad corporation shall not be liable for any such damages unless negligently or wilfully done."

The statement of claim by the plaintiff alleged that the Railroad Company failed to maintain on the side

of its right of way "a fence suitable and sufficient to prevent cattle from getting on said railroad" and failed "to maintain gates or bars at a certain farm crossing of such railroad" * * * "suitable and sufficient to prevent cattle from getting on such railroad," by reason of which failures the bull was run over.

The Railroad Company answered that it did erect and maintain on the side of its right of way adjoining the farm in which the bull was pastured "a good, suitable and sufficient fence as required by the laws of the State of Illinois," and that "said fence and gate were in good repair at the time the bull in question got upon the right of way of said railroad company."

The counsel for defendant in error says that the question before us is purely one of fact. We think it one of mixed law and fact. The Company is made by the law liable for killing of the bull in question if it did not *keep,* in good repair, such a fence along its right of way as is provided for by the statute, and the bull got to the track in consequence. "Such a fence" is thus described: A fence (with gates or bars at the farm crossings) "suitable and sufficient to prevent cattle, horses, sheep, hogs or other stock from getting on such railroad." Of course if the bull reached the track notwithstanding the Railroad Company had performed its duty in this matter, because some human agency had taken a gate from its hinges and thrown it on the ground during the night in which the bull was killed and before the Company had notice of that situation, the Company is not liable. *Illinois Cent. R. Co. v. Swearingen,* 47 Ill. 206; *Chicago & A. R. Co. v. Umphenour,* 69 Ill. 198; *Indianapolis & St. L. R. Co. v. Hall,* 88 Ill. 368; *Chicago & A. R. Co. v. Saunders,* 85 Ill. 288.

The defendant in this case maintains that the evidence that this was not the fact in the case at bar was not sufficient. The bull was found dead on the track

on the early morning of October 28, 1910, and a gate in the fence about one hundred feet away was hanging by the latch end to the fence post, but was twisted, with the hinge end off the hinges and down on the ground.  There was space enough for the bull to walk through between the fence post at the hinge end and the end of the unhinged and overthrown gate.  The man who found him said: "I examined the gate and from the marks and scratches it looked to me as if the bull had got his horns caught in the gate and had thrown the gate from its hinges and then walked out on the tracks and was killed by some train or engine."

From the evidence it looked the same way to the court below, and looks so to us, and we may consider this therefore a decision of fact by the court below, approved by us.  But this leaves still a question of mixed law and fact to be decided, namely,—Was the fence including the gate "suitable and sufficient to prevent cattle, horses, sheep, hogs or other stock from getting on the railroad?"  If "suitable and sufficient" were to be taken according to the strict letter, it might be properly said, as the counsel for the defendant in error does say in his argument, *res ipsa loquitur*.  The fence did not actually prevent the bull from getting on the railroad; therefore in this strict literal sense it was not "sufficient" to do so.  Used in that sense "sufficient" means "equal to the end desired." But to its use in the statute in question and in its predecessors the Supreme Court of Illinois has applied the "rule of reason," and given to it in connection with its accompanying word "suitable" in the act much the same meaning as this latter word, namely, "fit," "satisfactory." Thus Judge Caton says in *Illinois Cent. R. Co. v. Dickerson*, 27 Ill. 55, speaking in a case where a fence was up at nightfall and there was a gap in it in the morning through which gap cattle had passed to the tracks during the night: "When up, the proof does not show that the fence at this point was not good and sufficient.  It can-

not be the duty of the railroad company to keep a patrol all night the whole length of their road to see that the fence is not broken down by breachy cattle, by evil men, or by a whirlwind. If the company use all reasonable diligence to keep up the fence, that is all the law requires, and it is not guilty of negligence in that particular.''

This language at least implies that ''sufficient'' in the statute did not mean sufficient to withstand ''breachy'' cattle.

The same general doctrine is that applied in *Illinois Cent. R. Co. v. Swearingen,* 47 Ill. 206; *Indianapolis & St. L. R. Co. v. Hall,* 88 Ill. 368, and *Chicago & A. R. Co. v. Umphenour,* 69 Ill. 198; although in this last case the Court indicates that the mere fact that animals had not broken bounds during a considerable time was not proof that the fence was ''sufficient,'' which was to be determined by the character of the fence.

Judge Higbee in the Appellate Court of the Third District, says of a gate which was lifted by a horse so that a hook was released and the gate opened:

''The company was not required to fasten the gate so that it was impossible for stock to open it under any and all circumstances. It had a right to use the fastenings commonly adopted in the country by persons reasonably prudent and careful, and regarded by them as safe, for the purpose. It is not likely that many gates could be found in city or country, fastened with latch or hook, that it would be impossible to open by the nose or teeth of a horse if dexterously applied for that purpose. To hold that the company must provide against such contingencies, would be to adopt a standard of diligence that would make it an insurer of the sufficiency of its fences under all circumstances. This the law does not require.'' *Chicago & A. Ry. Co. v. Buck,* 14 Ill. App. 394.

This language is as applicable to the horns of a bull as to ''the nose or teeth of a horse,'' and while not authoritative to us commends itself to our sense of reason and justice. To the same effect is the lan-

guage of the Appellate Court of the Second District in *Chicago, B. & Q. R. Co. v. Evans,* 45 Ill. App. 79.

In the case at bar the gate and its fastenings were thus described in the evidence. There was no serious dispute about them. The gate was made of four boards and was about sixteen feet long and four feet high. It was "standard" as to hinges and fastenings, as the carpenter for the Railroad, who built it, testified. It had been considered proper for its purpose for four years before, and had performed that purpose of keeping cattle confined satisfactorily. The bull which came through seems to have been restrained by it for a year or more, certainly all the summer before. On its hinge end it was attached to a cedar post six feet high by two hinges, each made thus: An iron bolt driven into the post was turned up to make an upright of about two inches and around that upright a loop of strap iron about two inches wide attached to the gate made the connection and allowed the gate to swing when opened at the other end. It is a little difficult to follow with exactness the descriptions and measurements given in the testimony, simple as the construction evidently was. But it is quite plain that the gate and the hinges were of a common type known in farm gates. There is no reason to doubt the Railroad carpenter's assertion that the gate was "standard." It remained the same at the time of the trial as it was before the escape of the bull. The gate could not have been thrown down from the hinge end unless it had been lifted a matter of at least two inches. It is a matter of common knowledge that while cattle do not as a rule lift latches and raise gates off their hinges, there is here and there a "breachy" animal who exercises apparently almost human ingenuity in doing it. It is not for such cattle that the railroad company has to provide. It seems to us evident from the testimony in this case that the bull here in question was for the nonce at any rate a "breachy" animal. He could in all probability have

lifted the gate four inches as well as two, if disposed to throw it down and intelligent enough (as he seems to have been) to know how. There was no evidence, we think, of a failure of the Railroad Company to perform its statutory duty, and therefore none to justify the finding and judgment of the trial judge.

The judgment of the Municipal Court of Chicago is reversed, and a judgment of *nil capiat* will be entered here.

*Reversed and judgment here.*